**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VITO CONTILLI,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS PENSION FUND and LOCAL 705, INTERNATIONAL BROTHERHOOD OF TEAMSTERS HEALTH AND WELFARE FUND,<br><br>　　　　Defendants. | No. 05 C 0080<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Vito Contilli has brought this lawsuit under ERISA, challenging denials of claimed benefits by two Teamster funds – the Pension Fund ("Pension") and the Health & Welfare Fund ("H&W"). Defendants have filed a motion for summary judgment, and, for the following reasons, that motion is granted.

Both funds are operated in the customary way, with a board of trustees and a staff executing the provisions of a written plan. The Administrator and Trustees have the sole authority to rule on claims. If the Administrator denies a claim, it may be appealed to the Trustees, who receive the papers relevant to the claim and hold a hearing at which the participant can appear. The Trustees deliberate in the presence of the Administrator and fund lawyers, who can advise on technical matters. A medical advisor is present at the H&W appeal conferences. A majority vote of the Trustees determines the outcome. All of this is familiar practice in this field.

**Pension Service Credit Prior to 1953**

Vito Contilli appealed the denial of service credit. The trustees denied his appeal after looking at his documents, including his union initiation documents, military discharge papers and work history. Contilli did not choose to appear. A written explanation of the decision was issued to Contilli, who was aware that the Trustees' decision was final and binding.[1] Contilli contends that the Trustees did not have the complete records of his contributions when it reached its decision.

**H&W Fund Appeal**

Contilli's prior requests of specific medical claims of $5,279 (arising between April 7 and May 24 of 1997) and two weeks of disability benefits (for January 2 through January 17 of 1997) had been denied. His appeal was heard on March 4, 1998. He did not appear. The appeal failed because he had not taken COBRA continuation or paid premiums himself, so his coverage terminated on October 31, 1996. He had received notice of his continuation options in November of that year. Contilli challenges the validity of the notice since it significantly overstated the cost of continuation coverage under the rule in *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726 (7th Cir. 1999).

**Pension Application Appeal**

In 1998 Contilli applied for, and received, a "Normal Pension." The pension commences on either the date of normal retirement or the date of application, whichever is later. A completed application must be received before pension benefits can be received. Payments are

---

[1]Contilli was credited with nearly 43 years of service, from June 1953 through 1997. He turned 65 in 1995 and his last day of work under the Plan was in October of 1997.

not retroactive to a date prior to the application date, and this rule has been uniformly applied. He wanted an increase of benefits pursuant to an increase provided for those who retire on or after January 1, 1998 and he wanted the start date of whatever pension benefit he received to be January 1 rather than February 1. He appealed and lost on these issues.[2] Contilli argues that this ruling "forfeiting" his right to benefits violates ERISA rules against holding benefits to be forfeitable.

On January 6, 2005, he filed suit in this case for both benefits which he had appealed and those he had not. Defendants and Contilli have both sought summary judgment. Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in Plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (*citing Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). For cases like this, the customary record developed in discovery is not always necessary since the cases are much like an administrative review, based on the administrative record of proceedings before the Trustees.

---

[2]Contilli said he signed his application on October 20, 1997. The Plan says it was on January 15, 1998.

3

The Trustees' actions will be sustained on appeal unless the actions are arbitrary and capricious. *See generally*, *Herzberger v. Standard Ins. Co.*, 205 F.3d 327 (7th Cir. 2000); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999). If the Plan confers discretionary authority on the Trustees, which both Plans here do, deference is owed to the Trustees. *Militello v. Central States, Southeast & Southwest Areas Pension Fund*, 360 F.3d 681 (7th Cir. 2004). The Trustees claim that their process was thorough and reasonable, and so were their decisions. With respect to the claims Contilli did not appeal, the Trustees say that they should be dismissed for failure to exhaust administrative remedies, even where exhaustion is not required by the Plan's language. *Ames v. American National Can Co.*, 170 F.3d 751 (7th Cir. 1999). In any event, the Trustees argue that their decisions were correct on the merits, even if exhaustion is not required and their decisions were reviewed without deference.

Contilli asserts that exhaustion is not required when appeal to the Trustees would be futile. He also claims the Trustees acted with "extreme animus" toward him because he had worked for the losing side in a union election. He claims the animus was further demonstrated because Contilli was not allowed to see his contribution history.

There is no evidence of extreme animus among the trustees. It would be poor policy to assume animus because a beneficiary was on the wrong side of a union election. It would open a door to merits review that the courts have closed by adopting a standard of deference. Even if a judge were to allow the challenge, there would have to be more evidence than the mere fact that a union member supported the loser. On this record, we have no idea of whether Contilli played a small or a large role in the election, whether the outcome of the election was ever in doubt, or

4

whether the efforts of Contilli to defeat the winning slate were vicious or tame. The conduct of a Funds official in refusing to provide records may have been less than gracious, but it does not show extreme animus. In any event, this was the conduct of one official, not of the Trustees.[3]

The exhibits support the Trustees' contention that Contilli did not prove, and still does not prove, that he worked enough hours to qualify for the continuation of his medical coverage beyond October 31, 1996. Also, some of Contilli's arguments are founded on the proposition that determinations of eligibility by the Pension Fund are binding on the Welfare Fund, which is not the law.

The Pension Fund acted within its discretion as well. The terms of the Plan are clear on the issue of effective date for benefits. The attack on the rules as violation of the non-forfeiture provisions of ERISA is misguided. Contilli's pension was not forfeited. The law allows a Fund to have rules concerning how to calculate the pension (the clarity of which is crucial to actuarial soundness) and, in this Plan, his right to benefits is tied to the date of his application. When he applies, whatever rights he has at that time cannot be forfeited. His choice of when to apply had an effect on his benefit, but he was treated the same as any other employee. *See Lunn v. Montgomery Ward & Company, Inc.*, 166 F.3d 880 (7th Cir. 1999). The only way to challenge this rule is to show that it was not consistently applied, which Contilli has failed to do. There was a dispute as to the date of filing, but the Trustees' decision against Contilli was reasonable in light of the papers before it and the absence of Contilli's appearance to make any further case on appeal.

---

[3]Contilli did complain to the national union and the Department of Labor, neither of which accepted his complaints.

The papers before me do not give me any reason to conclude that I should disregard the general policy favoring exhaustion of administrative remedies. There is no evidence of futility. Contilli may believe in his heart that it was futile, but he does not come close to proving it. The deficient COBRA notice is not enough to allow any reasonable finder of fact to conclude that the Welfare Fund misled Contilli. First, he seems not to have told the Trustees that their amount was incorrect or that prior to November of 1996 he provided information that would have led the Fund to realize it overstated the amount of the premium. Contilli did not in fact make payments or self-pay, and it is quite clear from the notice that he would have to pay something. This case is not like *Popovits*, where the plaintiff did elect coverage and was billed for twice as much as was due and refused coverage until the overcharge was paid. This claim is waived, it was not appealed and does not seem to appear in the complaint here.

Given the appropriate standard of review for the actions of Plan trustees, there is no reasonable chance that Contilli can prevail in this case. Defendants' request for attorneys' fees and costs is entered and continued. We will discuss the matter at the next status date.

Defendants' motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: Jun 26, 2007